**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**James HOWSE, et al., Defendants.**

**Civ. A. No. H–89–1908.**

United States District Court,
S.D. Texas,
Houston Division.

May 4, 1990.

("FDIC") in its corporate capacity, as successor-in-interest to Alliance Savings & Loan Association ("Alliance"), against Alliance's former officers and directors. FDIC's Second Amended Complaint asserts causes of action against these defendants for negligence in their capacities as officers and directors (paras. 47–50) and for breach of contract, breach of fiduciary duties, usurpation of corporate opportunities, and self-dealing (paras. 51–53). Defendants Howse, Cersonsky, Gaylor, Mattson, Rosen, Rudolph, Weiner and Yang have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment, based on limitations. (Docket Entry No. 14)

Defendants argue that FDIC is barred by Texas statutes of limitations because it waited until June 1, 1989, to sue them for wrongful conduct that allegedly occurred, and which FDIC discovered, in 1983, 1984 and 1985. Anticipating FDIC's tolling argument, defendants argue alternatively that even though they were officers and directors of Alliance until July of 1986, they relinquished control over much of Alliance's business after October of 1985 when FSLIC (the predecessor-in-interest to FDIC), the Texas Savings and Loan Department ("TSLD"), and Alliance entered into a Voluntary Supervisory Control Agreement and a Consent Agreement. Defendants contend that once these agreements were ratified any possible tolling of the Texas limitations periods ended because (1) plaintiff's agents were in control of Alliance and plaintiff should have then discovered any wrongful conduct and (2) the Consent Agreement made plaintiff a conservator of Alliance. Because defendants' motion presents matters outside the pleadings, the Court will treat it as a motion for summary judgment.

A party seeking summary judgment must establish (1) that no genuine dispute exists about any material fact and (2) that the law entitles it to judgment. Fed.R. Civ.P. 56(c); *Thomas v. Harris County*, 784 F.2d 648, 651 (5th Cir.1986). Until the movant has properly supported the motion no response is required. Once this is done

James C. Winton, Baker, Hostetler, McCutchen & Black, Houston, Tex., for plaintiff.

Abbe David Lowell, Brand & Lowell, Washington, D.C., Sidney Ravkind, Mandell & Wright, Houston, Tex., and Steve McConnico, Scott, Douglass & Luton, Austin, Tex., for defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

This is an action for damages brought by the Federal Deposit Insurance Corporation

the nonmovant must present evidence demonstrating specific, contested facts that are material to the issues requiring adjudication in order to preclude the rendition of a summary judgment. Fed.R.Civ.P. 56(e). Mere allegations or denials are not sufficient. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Since this action is one brought by an agency of the United States,[1] the Court must engage in a two-step analysis to resolve the statute of limitations defense. The Court must first determine whether the applicable Texas limitations periods had expired when FDIC (or its predecessor, FSLIC) acquired the state law causes of action it now alleges, and, if not, whether the applicable federal limitations periods expired between the date FDIC acquired the causes of action and the date it filed this suit. Resolution of these issues requires the Court to address a number of subsidiary issues. In analyzing the first issue the Court must decide:

(1) what Texas limitations periods apply;

(2) when the Texas limitations periods accrued;

(3) whether the Texas limitations periods were tolled while defendants controlled Alliance's board;

(4) whether the appointment of a supervisory agent by TSLD in October of 1985 ended defendants' control over Alliance's board, thereby ending any tolling of the Texas limitations periods;

(5) whether the Consent Agreement created a conservatorship; and

(6) when FDIC acquired its causes of action.

If the second issue is reached, the Court must decide:

(1) what federal limitations periods apply; and

(2) when the federal limitations periods accrued.

The Court will address each of these issues in order.

I. *Did Texas Limitations Periods Expire Before FDIC Acquired its Causes of Action?*

(1) What Texas Limitations Periods Apply

FDIC's causes of action sound in both tort and contract. The Texas statute of limitations for a tort action is two years from the date the cause of action accrues. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986). The Texas statute of limitations for a contract action is four years from the date the cause of action accrues. Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986).

(2) When Did the Texas Limitations Periods Accrue

■ Generally, a tort action accrues when the tort is committed. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967). Although this rule applies even though the amount of damages cannot be determined until a later date, *id.; Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 386 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.), some legally recognized injury must be sustained before a cause of action in tort will accrue. *Atkins v. Crosland*, 417 S.W.2d at 153; *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984). In certain instances, when the plaintiff may not even be aware that he has suffered an injury, Texas courts apply a discovery rule. In these cases the cause of action accrues when the injury is discovered, or should have been discovered, in the exercise of reasonable diligence. *Otis v. Scientific Atlanta, Inc.*, 612 S.W.2d 665, 666 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). The

---

1. 28 U.S.C. § 451 defines "agency" as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense." The FDIC was created by an Act of Congress, 12 U.S.C. §§ 1811, *et seq.*, and all civil suits to which FDIC is a party are "deemed to arise under the laws of the United States." 12 U.S.C. § 1819. FDIC is therefore an agency of the United States, and it remains an agency of the United States even when it acts in its corporate capacity. *See FDIC v. Bird*, 516 F.Supp. 647, 649 (D.P.R.1981).

discovery rule also applies to an action for breach of fiduciary duty sounding in tort. *Willis v. Maverick,* 760 S.W.2d 642, 644–45 (Tex.1988). A cause of action for breach of fiduciary duty imposed by an agreement accrues when the duty is breached. *Leigh v. Weiner,* 679 S.W.2d 46, 49 (Tex.App.—Houston [14th Dist.] 1984, no writ). An action for breach of contract also accrues at the time of breach. *Hurbrough v. Cain,* 571 S.W.2d 216, 221 (Tex.Civ.App.—Tyler 1978, no writ). Since FDIC admits that it had contemporaneous knowledge of defendants' injurious acts and omissions complained of in this suit,[2] all of FDIC's causes of action accrued when the conduct occurred unless limitations were tolled.

(3) Were the Texas Limitations Periods Tolled While Defendants Controlled Alliance's Board

■ Under Texas law a cause of action by a corporation against its directors does not accrue until a majority of disinterested directors have discovered or are put on notice of the cause of action. *Allen v. Wilkerson,* 396 S.W.2d 493, 500 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). Most authorities hold that application of this "adverse domination" tolling rule is presumed if the allegedly culpable directors constitute a majority of the board of directors. [A]s long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled. The rationale behind this theory is that the wrongdoers cannot be expected to bring an action against themselves. Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter.

*FDIC v. Hudson,* 673 F.Supp. 1039, 1042 (D.Kan.1987); *accord, FDIC v. Carlson,* 698 F.Supp. 178, 180 (D.Minn.1988); *FSLIC v. Burdette,* 696 F.Supp. 1196, 1200 (E.D. Tenn.1988); *FSLIC v. Williams,* 599 F.Supp. 1184, 1193–95 (D.Md.1984); *FDIC v. Buttram,* 590 F.Supp. 251, 254 (N.D.Ala. 1984); *FDIC v. Bird,* 516 F.Supp. 647, 651 (D.P.R.1981).

■ FDIC urges the Court to adopt the adverse domination rule and hold that the Texas statutes of limitations were tolled until July of 1986 when defendants no longer constituted a majority of the Alliance board. Relying on *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984) (*quoting International Railways of Central America v. United Fruit Co.,* 373 F.2d 408, 414 (2d Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967)), defendants argue that the Court should reject the adverse domination rule and hold instead that in order to toll limitations FDIC has the burden of showing full, complete and exclusive control over Alliance by defendants. Under this test "once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue." *Id.*

The Court is unpersuaded by defendants' argument for several reasons. First, the adverse domination rule is in accord with Texas law, *see Allen v. Wilkerson,* 396 S.W.2d 493, 500 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.), and has gained widespread support among other courts, while the rule urged by defendants has not found support outside the Second and

**2.** In its Second Amended Complaint (Docket Entry No. 50), FDIC admits that:

18. During the years 1983 to 1985, pursuant to the regulatory and supervisory powers granted to it, the FHLBB [Federal Home Loan Bank Board] discovered and advised ALLIANCE of many unsafe, unsound and dangerous business practices and the violation of numerous statutes and regulations. Notwithstanding these repeated notices, the DIRECTOR AND OFFICER DEFENDANTS continued to conduct ALLIANCE's business in violation of those statutes and regulations, despite the execution of a supervisory agreement and a consent agreement in late 1985 between the FHLBB and ALLIANCE.

20. Paragraphs 23 through 46 hereof set forth specific examples of transactions entered into by Alliance that involved unsafe and unsound practices and regulatory violations by the DIRECTOR AND OFFICER DEFENDANTS.

Ninth Circuits. More importantly, the Court concludes that the adverse domination rule more accurately reflects the realities of suing wrongdoing directors who control a corporation.

> As long as the majority of the board of directors are culpable they may continue to operate the association and control it in an effort to prevent action from being taken against them. While they retain control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a result, it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control.

*FSLIC v. Williams*, 599 F.Supp. at 1193–94, n. 12.

The Court adopts the adverse domination rule and holds that the Texas statutes of limitations were tolled while defendants dominated Alliance's board. Alternatively, the Court holds that were it to apply the rule urged by defendants, under the summary judgment evidence discussed below, FDIC has negated the possibility that an informed stockholder or director could have induced defendants to sue themselves for the wrongs alleged in this action while they dominated Alliance's board.

#### (4) Did the October 1985 Consent Agreement End the Defendants' Adverse Domination

██ In the alternative, defendants argue that even if the Court applies the adverse domination rule, it should find that FDIC's causes of action accrued in October of 1985, not in July of 1986. Defendants contend that although they did not resign as directors of Alliance until July of 1986, they gave up control over Alliance in October of 1985 when FSLIC, TSLD and Alliance entered into the Voluntary Supervisory Control Agreement and Consent Agreement. As a result of these agreements, TSLD appointed Kenton Fickes as supervisory agent for Alliance, and the defendant directors were not authorized to take any actions without first obtaining authority from Mr. Fickes. Defendants argue that any tolling of the statutes of limitations ended when Mr. Fickes took control of Alliance because at that time FDIC should have discovered any alleged wrongdoing by defendants.

Defendants' argument is unpersuasive for several reasons. First, the summary judgment evidence requires a contrary conclusion. The affidavits of Mr. Fickes (contained in Docket Entry No. 18) and John Sharman (Docket Entry No. 24, Exhibit A) state that defendants continued to exercise control over Alliance and to inhibit Mr. Fickes' ability to conduct Alliance's business. Defendants have filed no affidavits to the contrary. Second, *Allen v. Wilkerson* and the other cases cited above hold that limitations are tolled as long as the wrongdoing directors make up a majority of the board. The Consent Agreement did not change the fact that defendants were the entire board. Third, even if, as defendants argue, FDIC should have discovered defendants' wrongdoing after October of 1985, FDIC was still powerless to pursue legal action against defendants in Alliance's name.[3] The Court therefore concludes that Alliance's entry into the Consent Agreement and the appointment of Mr. Fickes as supervisory agent by TSLD did not end the adverse domination by defendants over Alliance's board of directors.

#### (5) Did the Consent Agreement Create a Conservatorship

██ Defendants also argue that the Consent Agreement created a conservatorship by FDIC over Alliance, thereby ending any possible adverse domination by defen-

---

**3.** *See FDIC v. Buttram,* 590 F.Supp. at 254 (even if FDIC knew of mismanagement by officers and directors, such knowledge could not have caused the federal statute of limitations to start running until the FDIC was appointed receiver because, prior to that time, the FDIC had no legal authority to bring suit on behalf of the bank against the officers and directors who were still in control of the bank); *cf. FDIC v. Carlson,* 698 F.Supp. at 179 ("FDIC has no duty to warn banks of improprieties its examinations reveal in order to protect the bank from losses.").

dants. The Court concludes that the Consent Agreement did not create a conservatorship for a number of reasons. First, the language of the Consent Agreement does not reflect that it was intended to create a conservatorship. The purpose of the agreement was to "forbear" FSLIC [the original party to the agreement] from "initiating cease and desist proceedings against the Association." Although defendants acknowledge in the agreement that grounds exist for the appointment of a conservator and consent to "the appointment of a conservator, receiver, or other legal custodian for the Association by the FHLBB," no such appointment of a conservator, receiver or other legal custodian is made in the agreement. (Docket Entry No. 30, Exhibit A, Consent Agreement, preamble recitals three, four, and five, and para. 5) The thrust of the agreement was to provide a means of interim regulatory supervision, short of a receivership or conservatorship. Second, the Consent Agreement did not endow FSLIC with all the powers and duties of a conservator provided for by the Bank Conservation Act, 12 U.S.C. §§ 201, et seq., (the "BCA"),[4] as amended by FIRREA. In fact, the next-to-the-last substantive paragraph of the agreement recites that it is a cease and desist order entered pursuant to § 407(e) of the National Housing Act, 12 U.S.C. § 1730(e).[5]

Third, the BCA does not mention a consent agreement as an acceptable means of creating a conservatorship, and the Comptroller of the Currency was not a party to the Consent Agreement as would be required by 12 U.S.C. § 203 to create a conservatorship. Finally, neither the cases cited by defendants[6] nor any case found by the Court, supports defendants' argument that the Consent Agreement created a conservatorship. The Court therefore concludes that the Consent Agreement did not create a conservatorship.

**(6) When did FDIC Acquire its Causes of Action**

■ FDIC had no right to assert the instant causes of action on behalf of Alliance until FDIC was appointed conservator or receiver. *See, e.g., FDIC v. Hinkson,* 848 F.2d 432, 434 (3d Cir.1988); *FDIC v. Greenwood,* 701 F.Supp. 691, 694 (C.D.Ill. 1988); *FSLIC v. Burdette,* 696 F.Supp. at 1200; *FSLIC v. Musacchio,* 695 F.Supp. at 1067; *FDIC v. Hudson,* 673 F.Supp. at 1041; *FSLIC v. Williams,* 599 F.Supp. at 1193; *FDIC v. Buttram,* 590 F.Supp. at 254. Since the Court has concluded that the Consent Agreement did not create a conservatorship, FDIC acquired the instant causes of action on May 13, 1988, when it was appointed receiver of Alliance.

---

4. The BCA governs the appointment, powers and duties, and termination of a federal conservatorship. 12 U.S.C. § 206, as amended by FIRREA § 805, provides that:

    A conservator shall have all the powers of the shareholders, directors, and officers of the bank and may operate the bank in its own name unless the Comptroller in the order of appointment limits the conservator's authority.

5. FDIC has submitted the affidavit of Rosemary Stewart, Director of Enforcement for the Office of Thrift Supervision, that based on the language contained in the agreement, "[t]he Consent Agreement did not establish a conservatorship by the FSLIC for Alliance." (Docket Entry No. 30)

6. In *FSLIC v. Burdette,* 696 F.Supp. 1196 (E.D. Tenn.1988), the court held that FSLIC's claim against the bank's former officers and directors accrued when FSLIC entered into a consent resolution with the bank. *Id.* at 1200. The

court reasoned that once the resolution was ratified the directors no longer controlled the bank and their adverse domination ended. *Burdette* is distinguishable from the present case, however, because when the consent resolution was ratified in *Burdette,* the wrongdoing directors either resigned or were replaced by FSLIC. *Id.* at 1199. In the present case defendants remained officers and directors for several months after the Consent Agreement was ratified. In *FSLIC v. Musacchio,* 695 F.Supp. 1053 (N.D.Cal.1988), the FHLBB and the bank entered into a supervisory agreement on June 12, 1984, and not until almost two years later, on April 14, 1986, did the FHLBB declare the bank insolvent and appoint FSLIC as conservator. *Id.* at 1057. Although the court discusses the rights of a conservator, *id.* at 1067, it provides no support for defendants' argument that the Consent Agreement in this case created a conservatorship. Indeed, the opinion reflects the court's awareness that a supervisory agreement and a conservatorship are not to be equated. *Id.* at 1057.

**(7) Resolution of Issue One**

The Texas statutes of limitations governing FDIC's causes of action did not accrue until July of 1986 when defendants resigned as directors of Alliance. Until then the Texas limitations periods were tolled by the adverse domination rule. Applicable Texas limitations periods thus had not expired when FDIC acquired its causes of action on May 13, 1988.

II. *Did the Applicable Federal Limitations Periods Expire Before FDIC Filed Suit?*

█ When a federal agency acquires a cause of action from a private party that is not already barred by the applicable state limitations period, the federal statute of limitations thereafter preempts the state limitations period and controls the litigation. *FDIC v. Hinkson,* 848 F.2d at 434; *United States v. Sellers,* 487 F.2d 1268, 1269 (5th Cir.1973). The Court must now decide whether federal limitations periods bar the actions asserted by FDIC.

**(1) What Federal Limitations Periods Apply**

In general, when the United States or one of its agencies brings an action for money damages 28 U.S.C. § 2415 provides the federal statute of limitations. For contract actions § 2415(a) provides a six-year limitations period from the date the right of action accrues. For tort actions § 2415(b) provides a three-year limitations period from the date the right of action accrues.

On August 9, 1989, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989). Among the purposes of FIRREA were (1) to "strengthen the enforcement powers of Federal regulators of depository institutions" and (2) to "strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors." FIRREA § 101(9) and (10). To accomplish these purposes FIRREA granted FDIC certain powers and duties as conservator or receiver.

12 U.S.C. § 1821, as amended by FIRREA § 212. FIRREA § 212(d)(14) adopted an amended version of the limitations periods found in 28 U.S.C. § 2415(a) and (b). Section 212(d)(14) provides:

(14) STATUTE OF LIMITATIONS FOR ACTIONS BROUGHT BY CONSERVATOR OR RECEIVER.—

(A) IN GENERAL.—Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) DETERMINATION OF THE DATE ON WHICH A CLAIM ACCRUES.—For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14), as amended by FIRREA § 212(d)(14). Even a cursory reading of § 212(d)(14) reflects the intent of Congress to expand the limitations periods in actions brought by FDIC.

FDIC argues that 12 U.S.C. § 1821(d)(14), as amended by FIRREA § 212(d)(14), supersedes 28 U.S.C. § 2415 and provides the federal statutes of limitations governing FDIC's causes of action. Defendants argue that the § 212(d)(14) limitations periods are inapplicable for two reasons. First, defendants argue that

§ 212(d)(14) applies only to actions brought by FDIC as conservator or receiver. Since FDIC is acting in its corporate capacity in the present action, defendants contend that § 212(d)(14) does not apply. Second, defendants argue that since Congress did not expressly provide for retroactive application of § 212(d)(14), it only applies prospectively.[7]

### (a) Does FIRREA § 212(d)(14) Apply to Suits Brought by FDIC in its Corporate Capacity

■ Normally, both FDIC and FSLIC act in their corporate capacities in suing former officers and directors of a failed bank or savings and loan association. In the typical scenario, FDIC or FSLIC is first appointed as receiver of the failed institution. FDIC or FSLIC as receiver then sells certain of the institution's assets to FDIC or FSLIC in its corporate capacity. Among the assets usually sold to FDIC or FSLIC corporate are the institution's causes of action against its former officers and directors. FDIC or FSLIC corporate, as the real party-in-interest, then brings suit against the officers and directors. *See, e.g., FDIC v. Greenwood,* 701 F.Supp. at 692; *FDIC v. Carlson,* 698 F.Supp. at 178; *FSLIC v. Burdette,* 696 F.Supp. at 1198–99; *FDIC v. Hudson,* 673 F.Supp. at 1040; *FDIC v. Buttram,* 590 F.Supp. at 252; *FDIC v. Bird,* 516 F.Supp. at 648.

FSLIC was appointed receiver of Alliance on May 13, 1988. On the same day FSLIC receiver sold certain assets, including Alliance's causes of action, to FSLIC in its corporate capacity. FSLIC corporate then brought this action on June 1, 1989, as the real party-in-interest. When FIRREA was enacted in August of 1989, FSLIC was abolished. FIRREA § 401. In accordance with FIRREA, FDIC corporate succeeded FSLIC corporate as the real party-in-inter-

est in this case. FIRREA § 401(f)(2), 12 U.S.C. § 1437 note (repealed 1989); FIRREA § 215, establishing 12 U.S.C. §§ 1821a(a)(1) and (a)(2)(A).[8]

FIRREA expressly amends the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811, *et seq.,* to grant FDIC new and clearer authority to deal with its succession to FSLIC's assets and liabilities. FIRREA § 217 amends 12 U.S.C. § 1823 to provide in pertinent part:

(d) SALE OF ASSETS TO CORPORATION.—

(3) RIGHTS AND POWERS OF CORPORATION.—

(A) IN GENERAL.—With respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all of the rights, powers, privileges, and authorities of the Corporation as receiver under sections 1821 and 1825(b) of this title.

12 U.S.C. § 1823(d)(3)(A).

It is clear to the Court that § 1823(d)(3)(A) was intended to give FDIC corporate the same rights and powers as FDIC receiver under § 1821. Since one of those rights and powers is § 1821(d)(14)'s new limitations periods for suits brought by FDIC receiver, it follows that § 1821(d)(14) applies equally to FDIC corporate. Accordingly, the Court finds as a matter of law that the fact that FDIC corporate, rather than FDIC receiver, is the real party-in-interest does not preclude 12 U.S.C. § 1821(d)(14) from applying in this case.

### (b) Can FIRREA § 212(d)(14) be Applied Retroactively

■ Defendants argue alternatively that even if FIRREA § 212(d)(14) applies on its face, the statute is not applicable in this case because it cannot be applied retro-

---

**7.** 28 U.S.C. § 2415 and FIRREA § 212(d)(14) both provide three- and six-year limitations periods. Because the Court concludes below that for federal limitations purposes a cause of action does not accrue under § 2415 until FDIC acquires the claim by assignment or receivership (*see* footnote No. 10), the limitations periods in this case would be the same under either statute. Nevertheless, the Court will address the applicability of FIRREA § 212(d)(14) because

by resolving the split among circuits, § 212(d)(14)(B) provides an alternative basis for determining the accrual date under § 2415 even if the limitations periods in § 212(d)(14)(A) are not applicable.

**8.** FDIC's complete title is "FDIC, as manager of the FSLIC Resolution Fund." (Docket Entry No. 44)

actively. Defendants correctly note that FIRREA does not provide an effective date for most of its provisions, including § 212(d)(14). Therefore, the Court must rely on the rules of statutory construction to determine whether § 212(d)(14) applies retroactively.

▪ Absent an express provision, an act of Congress generally takes effect on the date of its enactment, when the President signs it into law. *United States v. York*, 830 F.2d 885, 892 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). Statutes affecting substantive rights are ordinarily given prospective effect because retroactive application would result in manifest injustice. *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *United States v. Fernandez–Toledo*, 749 F.2d 703, 705 (11th Cir.1985). On the other hand, statutory changes that relate only to procedure or remedy are usually held to be immediately applicable to pending cases. *United States v. Fernandez–Toledo*, 749 F.2d at 705; *United States v. Vanella*, 619 F.2d 384, 386 (5th Cir.1980). Statutes of limitations are considered to be procedural rather than substantive. *FDIC v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985); *Fust v. Arnar–Stone Labs, Inc.*, 736 F.2d 1098, 1100 (5th Cir.1984) ("Statutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are unconstitutionally cast."). Because such statutes affect only remedies, not substantive rights, their retroactive application normally does not violate the Fourteenth Amendment to the Constitution or cause manifest injustice. *United States v. Lindsay*, 346 U.S. 568, 570–71, 74 S.Ct. 287, 288–89, 98 L.Ed. 300 (1954); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314–15, 65 S.Ct. 1137, 1142–43, 89 L.Ed. 1628 (1945). Under this analysis the Court concludes that FIRREA § 212(d)(14) is to be applied retroactively.

Furthermore, two recent Fifth Circuit decisions provide additional support for applying FIRREA § 212(d)(14) retroactively. In *NCNB Texas National Bank v. Cowden*, 895 F.2d 1488, 1500–01 (5th Cir.1990), the Court applied FIRREA's amendments of the bridge bank statute, 12 U.S.C. § 1821(n), to a case filed before FIRREA's enactment in holding that a bank's fiduciary appointments were assets of the bank. The Court reasoned that Congress was clarifying existing law, not changing it.

> A number of courts have recognized that 'changes in statutory language need not *ipso facto* constitute a change in meaning or effect.' (citations omitted) Indeed, a legislative body may amend statutory language 'to make what was intended all along even more unmistakably clear.'

895 F.2d at 1500. The Court also observed that "the existence of a dispute in the courts, such as a circuit split, may suggest that Congress was provoked to enact an amendment to clarify rather than change the law." *Id.* at 1501. Similarly, although it does not discuss retroactivity, the Fifth Circuit's opinion in *Triland Holdings & Co. v. Sunbelt Service Corp.*, 884 F.2d 205, 207 (5th Cir.1989), implicitly holds that FIRREA's jurisdictional provision is to be given retroactive application to cases filed before the passage of FIRREA.[9]

The Court concludes that § 212(d)(14) applies retroactively under the *Cowden* analysis. Section 212(a) expressly states that it is intended by Congress to "amend" existing provisions of 12 U.S.C. § 1821. The fact that § 212(d)(14)(A) adopts essentially the same federal limitations periods that are found in 28 U.S.C. § 2415 further evidences Congress' intent to clarify the existing limitations law. Also, § 212(d)(14)(B) evidences Congress' intent to resolve the circuit split, discussed below, over when FDIC's causes of action accrue for federal limitations purposes.

Since the Court finds that FIRREA § 212(d)(14) applies on its face to suits

---

**9.** *See also FDIC v. Cherry, Bekaert & Holland,* 129 F.R.D. 188 (M.D.Fla.1989) (applying the same analysis as *Cowden* to find that FIRREA's amendments apply retroactively to determine whether FDIC-corporate may assert the attorney-client privilege of a failed bank).

brought by FDIC corporate, and that the statute applies retroactively, the Court finds that 12 U.S.C. § 1821(d)(14), as amended by FIRREA § 212(d)(14), provides the applicable federal statutes of limitations in this case.

(2) When did the Federal Limitations Periods Accrue

 Courts interpreting 28 U.S.C. § 2415 have split on when federal statutes of limitations begin to run on claims acquired by the FDIC. One line of cases holds that a cause of action does not accrue under § 2415 until the federal agency acquires the claim, usually the date of assignment or receivership. *FDIC v. Former Officers & Directors of Metropolitan Bank*, 884 F.2d 1304, 1309 (9th Cir.1989); *FDIC v. Hinkson*, 848 F.2d 432, 435 (3d Cir.1988); *FDIC v. Cardona*, 723 F.2d 132, 134 (1st Cir.1983); *FDIC v. Carlson*, 698 F.Supp. 178, 180 (D.Minn.1988); *FSLIC v. Burdette*, 696 F.Supp. 1196, 1200 (E.D. Tenn.1988); *FDIC v. Hudson*, 673 F.Supp. 1039, 1041 (D.Kan.1987); *FDIC v. Buttram*, 590 F.Supp. 251, 254 (N.D.Ala.1984). Another line of cases holds that the cause of action accrues when the claim first becomes actionable, regardless of whether the government had acquired the right to bring that action at that time. *FDIC v. Petersen*, 770 F.2d 141, 143 (10th Cir.1985); *FDIC v. Greenwood*, 701 F.Supp. 691, 694 (C.D.Ill.1988); *United States v. Cardinal*, 452 F.Supp. 542, 544 (D.Vt.1978). FIRREA § 212(d)(14)(B) resolves this split of authority by providing that for § 212(d)(14)(A) purposes, limitations begin to run *the later of* (i) the date FDIC is appointed conservator or receiver, or (ii) the date the cause of action accrues.[10]

Applying FIRREA § 212(d)(14)(B)(i) to this case, the Court finds that FDIC's causes of action accrued on May 13, 1988, when FSLIC was appointed receiver of Alliance. FDIC therefore had three years from that date, or until May 13, 1991, to bring its tort actions, and six years from

that date, or until May 13, 1994, to bring its contract actions.

III. *Conclusion*

Texas statutes of limitations had not expired when FDIC acquired its causes of action against defendants. Federal statutes of limitations had not expired on June 1, 1989, when FDIC filed this action. Accordingly, this action is not barred by limitations, and defendants' motion for summary judgment is DENIED.

---

10. Even absent Congress' resolution of this split through enactment of FIRREA § 212(d)(14)(B), the Court would reach the same result and would conclude, in accordance with the first line of cases discussed above, that limitations accrued under 28 U.S.C. § 2415 when FDIC acquired its causes of action.