**RESOLUTION TRUST CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Charles D. ACTON, David Clayton, William F. Courtney, Richard L. Davidson, and John R. Rittenberry, Defendants.**

Civ. No. 3:92–CV–624–H.

United States District Court, N.D. Texas, Dallas Division.

July 6, 1993.

---

Jack M. Englert, Jr., Anthony L. Joseph,
Denise S. Maes, Holland & Hart, Denver,
CO, Robert L. Schell, Virginia Adair Nelson
Hammerle, Hammerle & Couch, Denton, TX,

David L. Finney, Resolution Trust Corp., Legal Div., Dallas, TX, for Resolution Trust Corp.

William A. Roberts, Law Office of William A. Roberts, Paul Edward Coggins, Patricia Marie King, Meadows Owens Collier Reed Cousins & Blau, Brian Carl Jobe, Wimer & Jobe, Cheryl B. Wattley, Law Office of Cheryl Wattley, Linda Jean Barbour, Law Offices of Linda J. Barbour, Dallas, TX, for Charles D. Acton.

Edward P. Perrin, Jr., Hubert Adair Crouch, III, James C. Carlson, Crouch & Hallett, Dallas, TX, for David Clayton, Richard L. Davidson.

Gary Dale Elliston, Eric Duane Wewers, DeHay & Elliston, Dallas, TX, for William F. Courtney.

James E. Lobert, Rohne Hoodenpyle Lobert & Myers, Arlington, TX, for John R. Rittenberry.

John R. Rittenberry, pro se.

Maxel (Bud) Silverberg, pro se.

Maureen Powers, Atty. Gen. of Texas, Finance Div., Austin, TX, for Dan Morales.

*MEMORANDUM OPINION
AND ORDER*

SANDERS, Chief Judge.

On January 4, 1993, the RTC filed a Motion to Strike certain of the Defendants' affirmative defenses. Defendants Clayton and Davidson filed a joint response on January 25, 1993, Courtney responded separately on that day, and Acton responded on February 1, 1993. Defendant Rittenberry did not respond.

The Court concluded that the issues posed were more properly decided under a summary judgment standard and, by order filed March 18, 1993, converted the motion to one for partial summary judgment, allowing the Defendants extra time to respond. Defendants Clayton and Davidson filed a joint supplemental response on March 29, 1993, which Defendant Acton adopted on the same

date. Defendant Courtney filed his own supplemental response on that date.

## I. BACKGROUND

Defendants are former directors of HeritageBanc Savings Association ("HeritageBanc"), a savings and loan institution which was insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"). First Amended Complaint at 2. On April 5, 1989, the Federal Home Loan Bank Board ("FHLBB") placed HeritageBanc into conservatorship. *Id.* FSLIC was appointed to be the bank's conservator. *Id.* On August 9, 1989, the Resolution Trust Corporation ("RTC") succeeded FSLIC as HeritageBanc's conservator, and, when the bank was placed into receivership on April 27, 1990 by the Office of Thrift Supervision, the RTC was appointed receiver. *Id.* The RTC in its corporate capacity, Plaintiff here, purchased certain of HeritageBanc's assets, including the claims asserted in this action.

The RTC in its corporate capacity[1] has brought suit against five members of HeritageBanc's board of directors for negligence, breach of fiduciary duty, and gross negligence. Defendant Charles Acton ("Acton") was chairman of the board, president, and a stockholder of HeritageBanc from 1962 until its conservatorship, and Defendant John Rittenberry ("Rittenberry") was an executive vice president and director during that time. *See* Am'd Aff. of Wayne Roberts at 2, Exh. 1 to Pl.'s Reply. The other three Defendants, William F. Courtney ("Courtney"), David Clayton ("Clayton"), and Richard L. Davidson ("Davidson") were outside directors of HeritageBanc, holding no management positions within the bank. *Id.* Courtney was, in addition, outside counsel to HeritageBanc. First Amended Complaint at 3.

The RTC's claims center around the Defendants' alleged failure to adequately oversee the actions of Acton and members of his family who held positions at HeritageBanc and its subsidiary, Oak Tree Land Development Company, Inc. ("Oak Tree"). *See* First Amended Complaint. Particularly, the RTC

---

1. Unless otherwise specified, further references in this opinion to "the RTC" will denote the Plaintiff, the RTC in its corporate capacity.

alleges that the Defendants bear ultimate responsibility for their approval, or failure to dissent from approval, of a series of imprudent real estate loans. *Id.*

The RTC's current motion asks that the Court strike the following affirmative defenses: (1) statute of limitations and laches (2) defenses relating to culpable conduct on the part of federal regulatory agencies, and (3) federal preemption of certain of RTC's claims. As stated above, the Court will review the motion as one for partial summary judgment.

## II. SUMMARY JUDGMENT

"Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986) (interpreting Federal Rule of Civil Procedure 56 to enhance judicial economy).

■ Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. Before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the nonmovant's case. *See Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The threshold inquiry, therefore, is "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Of course, "the substantive law will identify which facts are material." *Id.* at 248, 106 S.Ct. at 2510.

■ The Supreme Court has explained that a movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the burden is on the opponent of the motion to make a showing sufficient to establish each element as to which that party will have the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

■ Once the moving party shows that it is entitled to summary judgment, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in original) (quoting Rule 56(e)); *see also Fontenot,* 780 F.2d at 1195–98. A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Stated another way, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356). However, all of the evidence must be viewed in the light most favorable to the motion's opponent. *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990).

## III. ANALYSIS

### A. STATUTE OF LIMITATIONS AND LACHES

■ In cases brought by a government agency such as the RTC, courts apply a two step limitations analysis. *F.D.I.C. v. Howse,* 736 F.Supp. 1437, 1440 (S.D.Tex.1990). First, it must be determined if the RTC's claims were viable under state law when federal regulators acquired the claims. If the claims were valid under state law when acquired, then the Court must determine whether suit was brought in compliance with the applicable three-year federal limitations period. *Id. See also* 12 U.S.C.A. § 1821(d)(14)(A)(ii).

### 1. State Limitations

RTC accuses the Defendants of negligence and breach of fiduciary duty with regard to transactions which occurred between 1982 and 1989. It is undisputed that Texas ap-

plies a two-year statute of limitations to such claims. *See* Tex.Civ.Prac. & Rem.Code § 16.003 (Vernon Supp.1993); *see also Willis v. Maverick,* 760 S.W.2d 642, 644–45 (Tex. 1988). The Defendants argue that since federal regulators took over HeritageBanc on April 5, 1989, any claims related to acts that took place more than two years earlier are barred. The RTC counters that all of its claims are valid because the limitations period was tolled under Texas' "adverse domination" rule.

■ The "adverse domination" rule holds that limitations are tolled on causes of action against members of a board of directors while the board is dominated by wrongdoers, the rationale being that it is unreasonable to expect them to bring an action against themselves. *See Howse,* 736 F.Supp. at 1441 (citing *Allen v. Wilkerson,* 396 S.W.2d 493, 500 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.)). The RTC argues that the Defendant directors in this case clearly dominated the HeritageBanc board, and that therefore, the limitations period was tolled until federal regulators took over. The Directors argue that there is at least an issue of fact as to whether this is true.

■ Defendants argue that to take advantage of the rule, the RTC must show that the board was comprised of a majority of "interested" directors, meaning directors who had a financial stake in a transaction. *See Allen,* 396 S.W.2d at 500; *Gearhart Industries, Inc. v. Smith Int'l, Inc.,* 741 F.2d 707, 719–20 (5th Cir 1984) (defining "interested" director). However, as the court in *F.D.I.C. v. Howse* pointed out, recent cases hold that application of the rule is "presumed if the allegedly culpable directors constitute a majority of the board of directors." 736 F.Supp. at 1441.

In *Howse,* the court granted summary judgment in favor of the FDIC on the limitations issue under Texas law, where the accused directors constituted a majority of the board. *Id.* at 1444. In so doing, the court rejected the defendant directors' argument that, in order to toll limitations, FDIC had to " 'effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue' " *Id.* at 1441 (citation omitted). Instead, the court recognized that " '[o]nly when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter.' " *Id.* (quoting *F.D.I.C. v. Hudson,* 673 F.Supp. 1039, 1042 (D.Kan.1987)); *see also F.D.I.C. v. Carlson,* 698 F.Supp. 178, 179 (D.Minn.1988).

The Court finds that the adverse domination rule is the correct rule to apply, and summary judgment is appropriate. First, the total number of HeritageBanc directors was nine during a large part of the relevant time period,[2] and the RTC has sued five of them. Thus, during much of the time period at issue, the accused directors constituted a majority of the board.

The directors argue that this is irrelevant because neither the informal nor formal rules nor bylaws of HeritageBanc required the approval of a majority of the board in order to bring suit on behalf of the bank against any director or group of directors. *See* Affidavit of John Rittenberry at 3. Theoretically then, any single board member could have sued the Defendants at any time for their alleged misconduct. *See R.T.C. v. International Insurance Co.,* 770 F.Supp. 300, 305–306 (E.D.La.1991) (denying RTC's motion to strike directors' limitations defenses where it was not shown that the defendant directors had the power to block a suit against themselves under the corporation's bylaws).

In the Court's view, this argument misses the point of the adverse domination rule, which is to toll limitations on claims that directors simply would not bring against themselves or their colleagues. In this case, HeritageBanc's board membership, with the one exception discussed above, remained constant during most of the period when the transactions at issue were approved. As further evidence of the board's domination by wrongdoers, the RTC avers that Acton and his family members received over 25% of all

---

**2.** Chester Plummer (father-in-law of Defendant Acton), George Sandusky, Henry Brandenburg, and Sam Thompson served on the board throughout 1984–89. Marcus Harrington was a director from 1962 until December 23, 1984. Amended Affidavit of Wayne Roberts at 3.

compensation that HeritageBanc paid to its officers and employees. *See* Am'd Aff. of Wayne Roberts at 4. Additionally, Acton's two sons-in-law, Patrick McElroy and Edward Cummings, served as "Advisory Directors" during the relevant time period.[3] Under such circumstances, the Court considers it fatuous to argue that any member of the HeritageBanc board would have brought suit for the causes of action now alleged. The Court thus finds that the adverse domination theory tolled the Texas statute of limitations on the RTC's claims.

### 2. Federal Limitations

The three-year federal limitations period began to run when federal regulators took over HeritageBanc on April 5, 1989. *See* 12 U.S.C.A. § 1821(d)(14)(B). Having filed this action on April 1, 1992, RTC has cleared the second hurdle in the limitations analysis. Summary judgment is thus **GRANTED** with respect to the directors' statute of limitations defenses.

### 3. Laches

The RTC has cited authority showing that, as a matter of law, laches is not available as a defense against federal bank regulators in this situation. *See, e.g., F.D.I.C. v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986); *F.D.I.C. v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992). Since the directors have not contested this assertion, the motion for summary judgment is also **GRANTED** with respect to the defense of laches.

### B. AFFIRMATIVE DEFENSES BASED ON CONDUCT OF THE FEDERAL REGULATORS[4]

The RTC moves to strike a variety of affirmative defenses relating to the conduct of federal regulators both before and after HeritageBanc's conservatorship. The defenses are: failure to mitigate damages, con-

tributory negligence, estoppel, consent or waiver, and the "superior equities" doctrine. *See* Pl.Exh. 1 to Orig. Motion; Pl.Exh. 3(A)–3(E) to Orig. Motion.

### 1. Pre–Conservatorship Conduct

■ As the RTC shows, courts have consistently held the pre-conservatorship conduct of federal banking regulators to be beyond attack by directors. *See, e.g., First State Bank of Hudson County v. United States,* 599 F.2d 558 (3rd Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980) (FDIC owed no duty to warn bank directors of wrongdoing committed by the bank's president); *Harmsen v. Smith,* 586 F.2d 156, 158 (9th Cir.1978) (Comptroller of the Currency owed no duty to shareholders and directors of banks); *F.D.I.C. v. Isham,* 782 F.Supp. 524, 531 (D.Colo.1992) ("former officers and directors cannot interpose FDIC's conduct for their own benefit as an affirmative defense to their misconduct."). The Defendants appear to concede this point, in that they cite no contrary authority or arguments. Summary judgment is thus **GRANTED** as to the Defendants' affirmative defenses regarding the pre-conservatorship conduct of federal banking regulators.

### 2. Post-Conservatorship Conduct

Defendants' allegations regarding post-conservatorship conduct mainly concern the manner in which the federal regulators disposed of the collateral for the loans at issue. *See* Pl.Exh. 3(A)–3(E) to Orig. Motion. The Defendants argue that the RTC's recovery on the collateral was reduced due to the regulators' failure to dispose of it in a commercially reasonable manner, and the entry into settlement agreements with certain parties. *Id.* As both sides point out, this issue has come up before other courts and there is a split of authority regarding whether di-

---

**3.** McElroy was an Advisory Director from January 28, 1981 until conservatorship; Cummings served in that capacity from January 28, 1981 until May 17, 1984. Am'd Aff. of Wayne Roberts at 3–4. According to RTC, Cummings was a beneficiary in many of the alleged imprudent transactions.

**4.** The Court uses the term "federal regulators" to collectively denote all of the federal banking regulators which regulated or handled the closing of HeritageBanc either pre- or post-conservatorship, including the FHLBB, FSLIC, and the RTC in its corporate capacity and in its capacity as a receiver.

rectors may assert the conduct of federal banking regulators after their assumption of control of the institution as an affirmative defense.

■ A large majority of the district courts that have confronted this issue have held that directors may not rely on the federal regulators' post-conservatorship conduct as a defense. These courts have cited public policy arguments, as well as the lack of any duty on the part of federal regulators towards directors to attempt to mitigate damages. *See, e.g., F.D.I.C. v. Isham,* 782 F.Supp. 524 (D.Colo.1992); *F.D.I.C. v. Baker,* 739 F.Supp. 1401 (C.D.Cal.1990); *F.D.I.C. v. Coble,* 720 F.Supp. 748 (E.D.Mo.1989); *F.D.I.C. v. Greenwood,* 719 F.Supp. 749 (C.D.Ill.1989); *F.D.I.C. v. Carlson,* 698 F.Supp. 178 (D.Minn.1988); *F.S.L.I.C. v. Roy,* 1988 WL 96570 (D.Md.1988). Such arguments were summed up by the court in *F.D.I.C. v. Burdette,* 718 F.Supp. 649, 663 (E.D.Tenn.1989):

> In cases of the failure of a savings institution, it is important to the public that the receiver rapidly and efficiently convert the assets of that institution to cash to repay the losses incurred by the insurance fund and the depositors for deposits not covered.... The rule that there is no duty owed to the institution or wrongdoers by the [federal regulators] is simply a means of expressing the broad public policy that the banking laws creating the [federal regulators] and prescribing [their] duties are directed to the public good, and that every separate act of the [regulator] as a receiver in collecting assets is not open to second guessing in actions to recover damages from wrongdoing directors and officers....

The Court finds this rationale persuasive and elects to follow the majority position.[5]

The Court's position is bolstered by the Supreme Court's analysis in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In *Gaubert,* the Supreme Court held that the activities of federal bank regulators in managing the day-to-day affairs of a bank were discretionary and in pursuit of public policy goals, and thus not subject to a claim of negligence under the Federal Tort Claims Act. While *Gaubert* concerned a direct claim against federal regulators, the case strengthens the Court's position that the acts of the federal regulators in this case should not be subject to "judicial 'second-guessing' ..." through the Defendants' affirmative defenses. 499 U.S. at 323, 111 S.Ct. at 1273 (citations omitted). Other district courts have adopted this interpretation of *Gaubert. See, e.g., F.D.I.C. v. Isham,* 782 F.Supp. at 531.

The Court has considered the Defendants' arguments and, without addressing each at length, finds them to be without merit. In particular, the Court disagrees with Defendants' argument that the Fifth Circuit's recent decision in *F.D.I.C. v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992) compels the allowance of their affirmative defenses. In *Ernst & Young,* the FDIC sued the auditor of a failed bank for negligence. The Fifth Circuit affirmed the opinion of this Court that, since no one had relied on the audit, there was no causation and FDIC could not recover. In its opinion, the Fifth Circuit stated that "the FDIC is not entitled to special protection when it brings a tort claim against a third party on behalf of a defunct financial entity ...," *id.* at 170, and it is upon this statement that the Defendants here rely. However, the *Ernst & Young* court went on to narrowly limit its ruling to the precise

---

5. Clayton and Davidson argue that they are only attempting to assert defenses against the Plaintiff, the RTC in its corporate capacity, and that many of the cited cases only discuss the conduct of regulators acting in their capacities as receivers. This argument is not well taken, first because Clayton and Davidson elsewhere assert their defenses against "RTC and its predecessors." *See* Pl.Exh. 3(B), 3(D) to Orig. Motion. The Defendants have not described which agencies acting in what capacities are alleged to have committed specific acts augmenting the damages

in this case. Furthermore, the Court finds that the same public policy and lack of duty rationales apply to conduct of the federal regulators whether acting as receivers or in their corporate capacities. *See Isham,* 782 F.Supp. at 532 ("this area of the law is plagued by shifting fine lines and subtle distinctions between the varying capacities of the [federal regulators] ..." and the focus should instead be "on the persons whose alleged wrongdoing brought about an insolvency in the first instance.").

facts of that case, which do not obtain here.[6] In light of this strong limiting statement, the Court does not think that *Ernst & Young* compels any particular result in this case.

Accordingly, summary judgment is **GRANTED** with respect to the Defendants' affirmative defenses regarding the post-conservatorship conduct of the RTC and its predecessors.

## C. FEDERAL PREEMPTION

■ Finally, the RTC moves for summary judgment on the Defendants' assertions that a clause of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") preempts RTC's state law claims for ordinary negligence and breach of fiduciary duty. The clause at issue states, in relevant part,

> A director or officer of an insured institution may be held personally liable for monetary damages ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care ... as ... defined and determined under applicable State Law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C.A. § 1821(k).

The RTC cites several cases holding that the clause does not preempt claims brought under state law for ordinary negligence. Most notably, the Tenth Circuit, the only Court of Appeals to have ruled on the issue, concluded that the statute's plain language shows that it is not meant to preempt state claims with a lesser standard than gross negligence. *See F.D.I.C. v. Canfield,* 967 F.2d 443, 446 n. 3, 449 (10th Cir.) (en banc), *cert. dism'd,* — U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992). The Court believes this to be the correct result, and, as the Defendants have offered no countervailing authority or arguments, the Court **GRANTS** summary judgment on this affirmative defense.

## IV. CONCLUSION

The RTC's Motion for Partial Summary Judgment is **GRANTED** with respect to the following of the Defendants' affirmative defenses: statute of limitations and laches; affirmative defenses regarding the pre- and post-conservatorship conduct of federal regulators, including failure to mitigate, comparative or contributory negligence, estoppel, consent or waiver, and the "superior equities" doctrine; and, the affirmative defense of federal preemption pursuant to 12 U.S.C. § 1821(k).

The above-listed affirmative defenses are hereby **DISMISSED.**

SO ORDERED.

---

**6.** "We limit our holding narrowly to the facts of this case under Texas law—ie. the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied." *Ernst & Young,* 967 F.2d at 172.