**Pauline LEE, Plaintiff,**

v.

**Louis SULLIVAN, Secretary, Department of Health and Human Services, Defendant.**

**No. C–89–2873 EFL (WDB).**

United States District Court,
N.D. California.

March 26, 1992.

Raymond W. Laing and David S. Handsher, San Francisco, Cal., for plaintiff.

U.S. Atty. William T. McGivern, Jr. and Asst. U.S. Attys. Stephen L. Schirle, San Francisco, Cal., and Beth McGarry, Pacifica, Cal., for defendant.

## ORDER MODIFYING AND FINALIZING TENTATIVE ORDER

BRAZIL, United States Magistrate Judge.

On January 21, 1992, this court entered a tentative order specifying the claims plaintiff may pursue in this action and the relief to which plaintiff is entitled if she prevails. We invited the parties to file briefs by February 6, 1992 contesting any matter addressed in the order. The tentative order was to have become final on that date with respect to all matters that the parties did not so contest. On February 6, 1992, plaintiff filed a response to the tentative order contesting our finding that plaintiff's administrative complaint number FSA 418–88 is not properly before us and should be dismissed. On February 12, 1992, defendant filed an opposition to plaintiff's response to the tentative order.

On February 14, 1992, this court entered an additional order, on that occasion inviting the parties to submit briefs by February 28, 1992, on the issue of whether the Civil Rights Act of 1991 should be applied retroactively to this case. Both parties submitted briefs on the issue on February 28, 1992.

Having considered the parties' written submissions as well as the record herein, the court hereby ORDERS the following:

1. A status conference shall be held by telephone conference call on Wednesday, May 6, 1992 at 2:00 p.m. Counsel for defendant shall be responsible for arranging the conference and placing the call to chambers at (415) 556–2696.

2. For the reasons described in the opinion below, the tentative order issued on January 21, 1992 is hereby MODIFIED so that (a) plaintiff is not precluded from seeking relief for the DHHS' denial of her within grade increase in June, 1985 and for DHHS' removal of her from her position in June, 1985 on the grounds that these actions were the result of handicap discrimination and (b) plaintiff is not precluded from seeking compensatory damages under Section 201 of the 1991 Civil Rights Act. As so modified, the tentative order is now made final.

3. By April 17, 1992, plaintiff shall file an amended complaint if she wishes to seek compensatory damages. If plaintiff so files an amended complaint, defendant shall file an amended answer by April 29, 1992. May 6, 1992 shall be the deadline for demanding a jury trial.

### OPINION

#### I. *Administrative Complaint FSA 418–88*

For the reasons set forth below, we now rule that no showing has been made that plaintiff is not entitled to challenge at trial

on the grounds of handicap discrimination the DHHS' alleged denial of plaintiff's requested within grade increase in June, 1985 and the DHHS' alleged removal of plaintiff from her position on June 21, 1985 (hereafter referred to as "the 1985 DHHS employment actions"). However, plaintiff shall not be allowed to seek any relief in this forum based solely on the DHHS' alleged rescission of these two actions in October, 1987.

Administrative complaint number FSA–418–88 was brought by plaintiff on June 24, 1988 pursuant to regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") (29 C.F.R. Part 1613). (Declaration of Harriette Treloar filed in this action on February 15, 1991 ("Treloar declaration") ¶ 20.) In the complaint, plaintiff asserted that each of the three following actions were products of handicap discrimination and reprisal against plaintiff for her prior EEO activity:

(a) DHHS' denial of plaintiff's within grade increase in June, 1985,

(b) DHHS' removal of plaintiff from her position on June 21, 1985,[1] and

(c) DHHS' decision to simply rescind these two acts in October, 1987, allegedly without providing plaintiff adequate relief for the harm in which these two acts resulted.

(Treloar decl. ¶ 20; Ex. 9 to Treloar decl.; Exs. 1, 6 to plaintiff's response to tentative order ("plaintiff's response").)[2]

Because the procedural history of the administrative actions surrounding this complaint is complicated, we briefly summarize it below for reference. Where relevant, the details of these various administrative actions will be discussed in our opinion, but we find it useful to set out a "roadmap" of the various events.

07/07/85 Plaintiff appeals to the MSPB the 1985 DHHS employment actions. (Treloar decl. ¶ 17.)

08/17/87 Plaintiff refiles her MSPB appeals for a final time after having received a number of extensions due to ill health. In these appeals, plaintiff alleges handicap discrimination, age discrimination, and reprisal. (Treloar decl. ¶ 17, Exs. 2, 3 to plaintiff's response.)

10/87 DHHS rescinds the 1985 DHHS employment actions. (Treloar decl. ¶ 17.)

11/13/87 In an initial decision, the MSPB dismisses plaintiff's appeals as moot. (Ex. 6 to Treloar decl.)

04/14/88 MSPB finalizes its decision dismissing plaintiff's appeals as moot. The MSPB notifies plaintiff that she may seek review of its decision before the Court of Appeals for the Federal Circuit. (Ex. 4 to plaintiff's response.)

05/16/88 Plaintiff seeks counseling with an EEOC counselor on the issues subsequently raised in FSA–418–88. (According to counsel for defendant in defendant's 2/17/92 opposition brief, page 3, lines 7–14.)

06/24/88 Plaintiff files EEO complaint number FSA–418–88 with the DHHS. (Treloar decl. ¶ 20.)

---

**1.** As noted above, these first two actions shall be collectively referred to as "the 1985 DHHS employment actions."

**2.** We are somewhat puzzled by the position defendant has taken in his February 12, 1992 opposition. On page 2, lines 12–14, defendant claims that only the DHHS' October, 1987 rescission of the 1985 DHHS employment actions was the focus of complaint number FSA–418–88, not the 1985 DHHS employment actions themselves. Although we do not have the full administrative record before us, it seems apparent from the evidence that all three actions were pursued in that complaint. Each of the EEOC opinions concerning this complaint which have been produced for our review, as well as paragraph 20 of the Treloar declaration, clearly describe all three actions as forming bases for the administrative complaint. Defendant appears to have produced no evidence from the administrative record to the contrary.

We also find it necessary to clarify for defendant that, although he is correct (in page 2, lines 25–26 of the opposition) that the tentative order included the 1985 DHHS employment actions in the trial of this matter, the tentative order only allowed plaintiff to allege that those actions were the product of unlawful *age discrimination* and *reprisal*. What is at issue here is whether plaintiff also should be allowed to allege that these actions were the product of unlawful *handicap discrimination*.

.. 

08/25/88 The DHHS rejects plaintiff's complaint pursuant to 29 C.F.R. § 1613.405(a). (Ex. 1 to plaintiff's response.)

01/24/89 Following plaintiff's appeal of the DHHS rejection to the EEOC/ORA, the EEOC/ORA dismisses the appeal pursuant to 29 C.F.R. § 1613.405(a) but informs plaintiff that, once the MSPB issues a final decision, she may seek review by the EEOC/ORA of "issues of prohibited discrimination that the MSPB considered in reaching its decision." (Ex. 5 to plaintiff's response.) (Apparently, the EEOC/ORA was unaware at this time that the MSPB had already issued its final decision.)

10/02/89 Following plaintiff's request that the EEOC/ORA reconsider its prior order, the EEOC/ORA issues a decision denying the request. The EEOC/ORA incorrectly finds that plaintiff did not raise allegations of discrimination in her MSPB appeals and that the prior EEOC/ORA order thus was incorrect in telling plaintiff she could seek review of the MSPB decision before the EEOC/ORA. (Ex. 9 to Treloar decl; Ex. 6 to plaintiff's response.)

In our January 21, 1992 tentative order, we proposed to make a finding that the claims for relief brought in EEO complaint FSA–418–88 were not properly before us because of plaintiff's apparent failure to follow proper administrative procedures. This proposed finding had two independent bases.

First, we tentatively found that the challenges to the 1985 DHHS employment actions were properly dismissed pursuant to 29 C.F.R. § 1613.405(a). That section requires the dismissal of EEO complaints brought by federal employees challenging employment actions by their agency employers that the employees already had challenged before the Merit Systems Protection Board ("MSPB"). *See Vinieratos v. U.S., Dept. of Air Force*, 939 F.2d 762, 770, n. 9 (9th Cir.1991). When an employee may challenge an adverse employment action either by appealing the action to the MSPB or by filing an EEO complaint,[3] the employee may elect only one of the two forums in which to pursue the matter. 29 C.F.R. § 1613.403. We found that plaintiff had already appealed the 1985 DHHS employment actions to the MSPB on July 7, 1985 and that she was thus precluded from renewing her challenge to these acts in the form of a new EEO complaint.

Second, we found it likely that the entire administrative complaint was properly dismissed pursuant to 29 C.F.R. § 1613.214(a)(1). That section requires the dismissal of EEO complaints not initiated within 30 days after the alleged act of discrimination, unless there was good cause for the late filing under 29 C.F.R. § 1613.214(a)(4). EEO complaint FSA–418–88 was not filed until three years after the 1985 DHHS employment actions and approximately nine months after the DHHS' rescission of these actions. We found that this delay raised a very strong inference that the complaint was not timely filed.[4]

Because we had very little of the actual administrative record before us, we allowed plaintiff the opportunity to challenge our tentative findings by producing evidence from the administrative record that she did

---

**3.** Such challenges in which either forum is available to the employee are designated as "mixed case complaints." (29 C.F.R. 1613.402(a).)

**4.** In making this finding, we were conscious of the fact that the EEO process was not actually initiated with the filing of the complaint but rather with the employee consulting with an EEO counselor. At the time of the tentative order, we did not know how long before filing the complaint that plaintiff actually sought such counseling. Theoretically, the complaint would have been timely even if filed months, or even years, after the alleged discriminatory acts so long as counseling was sought within 30 days after the act. However, given the mandate in 29 C.F.R. 1613.213(a) that the EEO counselor, within 21 days after the employee seeks counseling, hold a final interview with the employee and notify the employee of her right to file a complaint, and given the requirement of 29 C.F.R. 1613.214(a)(ii) that the employee file the complaint within 15 days after receiving notice of her right to do so, we nonetheless found it very unlikely that the complaint was timely filed.

indeed follow proper administrative procedures. Plaintiff filed such a response.

We now find that plaintiff's challenge to the 1985 DHHS employment actions on the basis of handicap discrimination is properly before us.

This finding is based on a crucial fact about which our tentative order was mistaken: that plaintiff actually alleged handicap discrimination (and other forms of discrimination) in her MSPB appeal. We inaccurately noted in footnote 1 of the tentative order that plaintiff did not raise her allegations of discrimination before the MSPB. We made this finding in reliance upon findings by the EEOC Office of Reviews and Appeals ("EEOC/ORA") in its October 2, 1989 decision. In that decision, it stated that "the record indicates that [plaintiff] did not include her allegations of discrimination in her appeal to the MSPB." We now find this statement to be incorrect. In her February 6, 1989 response, plaintiff has provided the court with copies of the MSPB appeals she filed on August 17, 1987.[5] These copies reveal that plaintiff did indeed allege handicap discrimination (not to mention age discrimination and reprisal) before the MSPB and even went so far as to designate each appeal as being a "mixed case." Thus, we find that the EEOC/ORA's October 2, 1989 finding that plaintiff did not raise allegations of unlawful discrimination in her MSPB appeals was incorrect.

We thus find as follows: (1) Because she raised allegations of handicap discrimination, age discrimination, and reprisal before the MSPB, plaintiff was entitled both to have the MSPB's decision reviewed by the EEOC/ORA and to bring suit in district court to seek relief from the alleged discrimination; (2) Neither the MSPB nor the EEOC/ORA informed plaintiff of her aforementioned rights to EEOC/ORA review of the MSPB's decision and to sue in federal court; (3) Plaintiff has now adequately invoked this court's jurisdiction to hear her claims of handicap discrimination, as the failure of the MSPB and the EEOC/ORA to properly notify plaintiff of her appeal rights excuses any failure on plaintiff's part to comply with applicable deadlines for filing suit.

A. *Raising allegations of handicap and other discrimination in her MSPB appeals entitled plaintiff to EEOC and federal district court review of the final MSPB decision.*

When a federal employee appeals an adverse employment action with the MSPB, the forum in which the employee may seek review of the final MSPB decision depends on whether the employee raises allegations of unlawful discrimination in the initial MSPB appeal.

When the employee does not allege that the appealed employment action was motivated by unlawful discrimination, she may seek review of the MSPB's final decision only before the United States Court of Appeals for the Federal Circuit, which reviews the decision under an "abuse of discretion" standard. 5 U.S.C. § 7703(b)(1); *Hays v. Postmaster Gen. of U.S.*, 868 F.2d 328 (9th Cir.1989); *Tolliver v. Deniro*, 790 F.2d 1394 (9th Cir.1986).

However, if the employee alleges that the adverse employment action was motivated by discrimination prohibited by certain statutes (including discrimination based on age or handicap), she may seek *de novo* judicial review of the merits of her MSPB appeal before the local federal district court and may not seek review before the Federal Circuit. 5 U.S.C. § 7703(b)(2);

---

**5.** These appeals were actually the fourth refilings of plaintiff's original MSPB appeals challenging the 1985 DHHS employment actions filed on July 7, 1985. Plaintiff had requested (and was granted) a number of extensions due to ill health. Each extension required plaintiff to refile her MSPB appeals within a certain time period. Plaintiff filed the final set of appeals on August 17, 1987, and these are the appeals of which plaintiff provided this court with copies.

(Treloar decl. ¶ 17, Exs. 2, 3 to plaintiff's response.)

In his February 12, 1992 opposition to plaintiff's response to the tentative order, defendant produced no evidence that allegations of unlawful discrimination were not made in any of the previous filings of the MSPB appeals and offered no argument that plaintiff was barred from raising them in later refilings if she indeed did fail to raise them in her original filings.

*Tolliver, supra,* 790 F.2d 1394; *Williams v. Department of Army,* 715 F.2d 1485 (Fed.Cir.1983). This is the case even if the employee seeks review of a matter decided by the MSPB that does not concern the discrimination aspects of the employee's appeal—the appeal cannot be bifurcated so that the Federal Circuit and a local district court share jurisdiction over different aspects of it. *Williams, supra,* 715 F.2d 1485.

■ Moreover, before filing suit on grounds of discrimination raised in an MSPB appeal, the employee may first petition the EEOC/ORA to review the MSPB's decision and wait to file suit (if necessary) until after the EEOC/ORA's final decision on the appeal. 5 U.S.C. § 7702(b); 29 C.F.R. § 1613.421.[6] If the EEOC/ORA declines to consider the decision of the MSPB, the employee may file suit following receipt of notice of the EEOC/ORA's final decision not to consider the matter. 29 C.F.R. § 1613.421(c).

All EEOC appeals of MSPB decisions, and all subsequent actions brought in federal court concerning discrimination claims brought before the MSPB, must be filed within 30 days after the employee learns of the MSPB's (or, as applicable, the EEOC/ORA's) final decision. 5 U.S.C. § 7702, 7703(b)(1), (2).

■ Thus, since plaintiff raised allegations of unlawful discrimination (again, on the basis of handicap, age, and reprisal) in her MSPB appeals, she was entitled to seek review of the final MSPB decision by the EEOC/ORA and she was entitled to file suit challenging discrimination alleged in the MSPB appeal provided that she took such action within 30 days of receipt of the "final decision." She was not, however, entitled to review of the MSPB's final decision by the Court of Appeals for the Federal Circuit.

**B.** *The MSPB and the EEOC/ORA misinformed plaintiff of her right to seek EEOC review of the MSPB's final decision and of her right to file suit.*

Both the MSPB and the EEOC/ORA incorrectly informed plaintiff that she could only seek relief from the MSPB's decision on her appeal before the Court of Appeals for the Federal Circuit.

Both the MSPB's initial decision on November 13, 1987 and its final decision on April 14, 1988 so informed the plaintiff. (Ex. 6 to Treloar declaration; Ex. 4 to plaintiff's response.)

■ The EEOC/ORA similarly misinformed plaintiff. On January 24, 1989, after plaintiff appealed the DHHS' rejection of complaint FSA–418–88 to the EEOC/ORA, the EEOC/ORA dismissed her appeal "without prejudice," noting that, "once [plaintiff] receives a final decision from the MSPB, appellant may file a petition, in writing, with the [EEOC/ORA] to consider issues of prohibited discrimination that the MSPB considered in reaching its decision," provided that she sought review within 30 days of receiving notice of the final decision. (Ex. 5 to plaintiff's response.) This notice of plaintiff's appeal rights was insufficient for two reasons. First, it did not notify plaintiff of her right to seek review of the MSPB's decision in federal district court. Second, it appears to have been based on a misperception of the EEOC/ORA that the MSPB had not yet issued a final decision. Since the final MSPB decision had long since been issued, and since the January 24, 1989 EEOC/ORA opinion told plaintiff that she had to seek review of the MSPB decision within 30 days of the decision having become final, the opinion in effect only informed plaintiff that it was too late to seek any review of the MSPB's decision.

---

**6.** As set forth in 5 U.S.C. § 7702, a number of different results could follow an appeal of an MSPB decision to the EEOC. If the EEOC agrees with the MSPB's decision or decides not to consider the MSPB's decision, the MSPB decision becomes final (for the purpose of seeking judicial review). If the EEOC disagrees with the MSPB decision, the matter is then remanded to the MSPB for reconsideration. The MSPB may acquiesce to the EEOC's decision and amend its decision to conform therewith, or the MSPB may disagree, in which case the matter is referred to a special panel for further proceedings.

Moreover, the EEOC/ORA compounded the confusion with its October 2, 1989 decision denying plaintiff's request for reconsideration. As noted *supra*, in that decision, the EEOC/ORA incorrectly found that plaintiff did not even raise any allegations of unlawful discrimination in her MSPB appeals. It thus concluded that the only review of the MSPB's final decision to which plaintiff was entitled was before the Court of Appeals for the Federal Circuit. (It thus found that its prior description of plaintiff's appeal rights in its January 14, 1989 decision was incorrect.)

C. *Plaintiff properly invoked this court's jurisdiction to review her claims of handicap discrimination.*

■ Given the repeated inability of the administrative agencies involved to follow appropriate administrative procedures, it would be unjust to dismiss plaintiff's handicap discrimination challenge to the 1985 DHHS employment actions on the grounds that she did not follow proper procedures.

Certainly, the complaint that plaintiff filed in this court properly raised allegations of handicap discrimination and incorporated the factual allegations raised in plaintiff's MSPB appeal by reference to her EEO complaint FSA–418–88 (which parroted the relevant allegations raised in the MSPB appeal). The main legal issue is whether the complaint was timely filed.

Even though plaintiff's complaint in this action (filed August 22, 1989) was filed more than 30 days after the MSPB reached its final decision on her appeal (April 14, 1988), her complaint was timely filed because she had not yet received accurate notice of her right to sue. Section 7703(b)(2), read in conjunction with 29 U.S.C. section 794a, provides that handicap discrimination suits be filed pursuant to 42 U.S.C. section 2000e–16(c) and requires that they "be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action ...." This 30 day time limit is identical to that provided by 42 U.S.C. section 2000e–16(c) itself. In construing the time limit in 42 U.S.C. section 2000e–16(c), the court in *Mahroom v. Hook*, 563 F.2d 1369, 1374 (9th Cir.1977), *cert. denied* 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978), held "that the thirty-day time limit does not begin to run until the aggrieved party has received actual formal notification of his statutory right to sue in federal court." Because section 7703(b)(2) incorporates 42 U.S.C. section 2000e–16(c) and merely echoes the time filing requirement of that statute, we find the holding of *Mahroom* equally applicable to section 7703(b)(2). Because, as of the date plaintiff filed her complaint, she still had not received notice of her right to sue in federal district court, the 30 day time limit had not yet begun to run on that date. Thus, her complaint was timely.[7]

We recognize that it is arguable that plaintiff should have named the MSPB as a respondent in the complaint in order to effectively challenge the MSPB's decision dismissing plaintiff's appeal as moot. Under an amendment to 5 U.S.C. § 7703(a)(2), which became effective approximately a month before plaintiff filed her complaint, the MSPB is to be named the respondent when an employee seeks judicial review of its opinion "unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action ..., in which case the agency responsible for taking the personnel action shall be the respondent."[8]

---

7. We also note that plaintiff exercised due diligence prior to filing the complaint, which is a requirement imposed by the court in *Casey v. MSPB*, 748 F.2d 685 (Fed.Cir.1984), in which an employee filed an MSPB appeal belatedly due to his employing agency's failure to inform him of his right to sue. Indeed, counsel for defendant has conceded in defendant's February 12, 1992 opposition that plaintiff has exercised due diligence: "The defendant does not contest that the plaintiff persistently appealed the MSPB's No-

vember 13, 1987, initial decision...." (Defendant's opposition brief 2:18–20.)

8. Prior to the amendment, the subsection provided that the employing agency always be named as the respondent when the employee seeks judicial review of a final decision issued by the MSPB on an appeal of an adverse employment action. See *Hagmeyer v. Department of Treasury*, 852 F.2d 531 (Fed.Cir.1988).

Defendant might argue that, since the MSPB dismissed the case as "moot," the MSPB did not make a decision on the merits, and thus the MSPB should have been named in the complaint.

■ The language of section 7703(a)(2) is ambiguous as to this issue. It could fairly be argued that the language requires that the MSPB be named whenever the MSPB does not reach a decision on the merits. Alternatively, however, it could be argued that the agency, rather than the MSPB, be named whenever the employee is seeking review of the merits of her discrimination claim, regardless of whether the MSPB reached the merits.

We find that the latter interpretation is more sensible. In actions challenging the merits of an agency employer's actions, it is the agency employer, not the MSPB, which is the real party in interest. The MSPB, on the other hand, would have a greater interest if the employee was challenging procedures that it employed rather than the merits of the agency employer's personnel action. This would be the case, for example, under section 7703(c)(2), under which an MSPB decision would be challenged as having been "obtained without procedures required by law, rule, or regulation having been followed."

■ Indeed, we find that, whenever an employee seeks *de novo* judicial review of the merits of a discrimination claim under subsections 7703(b)(2) and 7703(c), the agency employer (or, rather, the head of the agency employer) is properly named the defendant. As was noted *supra,* section 7703(b)(2) provides that cases involving allegations of handicap discrimination be brought pursuant to 42 U.S.C. section 2000e–16(c). That statute specifically provides that the head of the agency employer is to be named defendant in such suits. *See, e.g., Mahoney v. U.S. Postal Service,*

884 F.2d 1194, 1196 (9th Cir.1989). Thus, to resolve the ambiguity in section 7703(a)(2) in favor of requiring the MSPB to be named respondent in a case such as this would lead to a conflict between the requirements of this section and 42 U.S.C. section 2000e–16(c).

■ In sum, we find that plaintiff properly named defendant Sullivan in her complaint rather than the MSPB and, furthermore, that plaintiff's complaint was timely filed and otherwise properly invoked this court's jurisdiction to hear her challenge to the 1985 DHHS employment actions based upon handicap discrimination.[9]

## II. *The Civil Rights Act of 1991*

For the reasons set forth below, we now rule that, under the Civil Rights Act of 1991 (Public Law 102–166) (hereafter "the 1991 Act"), plaintiff is entitled to seek compensatory damages in this forum. Moreover, if plaintiff seeks such damages, either party will be entitled to demand a jury.

The 1991 Act clearly authorizes federal employees to seek compensatory damages for handicap discrimination and reprisal claims such as those made by plaintiff in this action. Under section 102 of the 1991 Act, federal employees may now seek compensatory damages against their agency employer when bringing suit under 42 U.S.C. section 2000e–16 for intentional discrimination prohibited by certain statutes, including 29 U.S.C. section 791 (discrimination by federal agencies on the basis of disability) and 42 U.S.C. section 2000e–3(a) (discrimination in retaliation for an employee's prior Title VII activity). Under Section 102(b)(3), such damages are subject to a cap of $300,000 for employers who (like defendant in this case) have more than 500 employees.[10] Section 102(c) further pro-

---

9. However, we continue to adhere to our finding in the January 21, 1992 tentative order that plaintiff's challenge to DHHS' October 1987 withdrawal of the 1985 DHHS employment actions is not properly before this court as an independent basis for relief. Plaintiff did not formally challenge this action until May 16, 1988 (by seeking EEO counseling), which was

approximately seven months after this action occurred. We thus find that the action was time-barred pursuant to 29 C.F.R. § 1613.214(a), which requires that such EEO counseling be sought within 30 days of the employment action sought to be challenged.

10. The cap ranges from $50,000 to $300,000, depending on the number of employees.

vides that, if such damages are sought, either party is entitled to demand a jury trial.

The main issue is whether the 1991 Act applies retroactively to cases (such as this one) pending on the date of its enactment, November 21, 1991.

■ We note that the 1991 Act does not authorize compensatory damages for age discrimination. Section 102(a)(1) only authorizes compensatory damages against persons "who engaged in unlawful intentional discrimination ... prohibited under section 703, 704, or 717 of the [Civil Rights Act of 1964]." Those sections only prohibit discrimination based on race, color, religion, sex, or national origin, or in reprisal for former EEOC activity. 42 U.S.C. §§ 2000e–2, 2000e–3, 2000e–16. Section 102(a)(2) only authorizes compensatory damages against persons "who engaged in unlawful intentional discrimination under section 501 of the Rehabilitation Act of 1973 ... or section 102 of the Americans with Disabilities Act of 1990." Those sections only address discrimination based on disability. 29 U.S.C. § 791; 42 U.S.C. § 12112. No section of the 1991 Act authorizes compensatory damages against persons who engaged in unlawful discrimination on the basis of age.

A. *Neither the 1991 Act nor applicable Supreme Court authority provides sufficient guidance on whether Section 102 should be applied retroactively.*

■ Our computer research has turned up over fifty published district court opinions decided during the last four months addressing the retroactivity issue. These opinions have reached conflicting conclusions. Examples of cases finding that the 1991 Act applies retroactively include *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302 (N.D.Cal.1992); *United States v. Department of Mental Health (Fresno)*, 785

F.Supp. 846 (E.D.Cal.1992); *Sanders v. Culinary Workers Union Local No. 226*, 783 F.Supp. 531 (D.Nev.1992); and *Long v. Carr*, 784 F.Supp. 887 (N.D.Ga.1992). Cases holding that the 1991 Act does not apply retroactively include *Van Meter v. Barr*, 778 F.Supp. 83 (D.D.C.1991); *Johnson v. Rice*, 1992 WL 16284 (S.D.Ohio 1992); and *Futch v. Stone*, 782 F.Supp. 284 (M.D.Pa.1992).

The source of the confusion is no mystery. There are two conflicting lines of Supreme Court authority governing whether a statute is to be construed as being retroactive. In *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court stated that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016. However, in *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court stated that "[r]etroactivity is not favored in the law.... [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. The Supreme Court acknowledged but expressly declined to resolve this conflict in *Kaiser Aluminum & Chemical Corp. v. Bonjoro*, 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1989).

In the present case, the statutory language of the 1991 Act is ambiguous as to whether it is retroactive, and it is clear from the legislative history that Congress, although it considered the issue, was unable to agree on whether the statute was to apply retroactively. *See, e.g., Sanders, supra*, 783 F.Supp. 531; *Futch, supra*, 782 F.Supp. 284.[11] Rather, Republican legislators insisted that the 1991 Act not be retroactive, while Democratic legislators insisted on retroactivity. *Hansel v. Public Ser-*

---

11. We will not retread here ground already well-traveled by the numerous other courts who have addressed the issue of retroactivity of the 1991 Act by providing yet another analysis of the language and the legislative history of the

1991 Act. The reasons for our finding that the language is ambiguous and the legislative intent is deliberately inconclusive are more than adequately set forth in such cases as *Sanders* and *Futch,* among many others.

*vice Co.,* 778 F.Supp. 1126, 1136–37 (D.Colo 1991).[12] In the end, it appears that the legislative process simply was incapable of resolving this issue.

· Because the statutory language and the legislative history of the 1991 Act are inconclusive as to retroactivity, *Bradley* and *Bowen* each lead to different results. Under *Bradley,* since there is no "statutory direction or legislative history to the contrary," the 1991 Act should be found to apply retroactively unless such application would result in a manifest injustice. Under *Bowen,* since the 1991 Act's language does not require retroactive application, the act should be construed to apply only prospectively.

Given the conflicting dictates from the Supreme Court, each of the district courts that has considered this issue has applied the law of its circuit, and "[t]he district courts have reached one conclusion or the other concerning the retroactivity of the 1991 Act, according to whether their Circuit prefers the *Bowen* or the *Bradley* line of cases." *Poston v. Reliable Drug Stores, Inc.,* 783 F.Supp. 1166, 1169 (S.D.Ind.1992).

B. *Ninth Circuit law requires that we apply Section 102 retroactively if we find that it is remedial and/or procedural in nature and that such application would not result in manifest injustice.*

We note that all published district court cases decided in the Ninth Circuit that we have located have concluded that at least Section 102 of the 1991 Civil Rights Act applies retroactively. *See Stender, supra,* 780 F.Supp. 1302, *Fresno, supra,* 785 F.Supp. 846; *Sanders, supra,* 783 F.Supp. 531.

The Ninth Circuit appears to have resolved the tension between *Bradley* and

*Bowen* by holding that a presumption in favor of retroactivity applies "when a statute is addressed to remedies and procedures and does not otherwise alter substantive rights." *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1039 (9th Cir.1985); *FDIC v. New Hampshire Insurance Co.* ("*NHIC*"), 953 F.2d 478, (9th Cir.1992).

We say "appears" because, as with the Supreme Court, there is significant contradiction in Ninth Circuit opinions as to whether there is a presumption in favor of or against retroactivity. Prior to its very recent decision in *NHIC,* the Ninth Circuit itself acknowledged that it had not explicitly resolved the tension between *Bradley* and *Bowen. Ayala–Chavez v. U.S. I.N.S.,* 945 F.2d 288, 295, n. 9 (9th Cir.1991). In some cases, the Ninth Circuit has adhered to *Bradley* even after *Bowen* was decided. *See, e.g., Gonzalez v. Aloha Airlines, Inc.,* 940 F.2d 1312, 1316 (9th Cir.1991); *Northern Mariana Islands v. Kawano,* 917 F.2d 379, 381–82 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1116, 113 L.Ed.2d 224 (1991); *In re Pacific Far East Lines, Inc.,* 889 F.2d 242, 247 (9th Cir.1989); *Bryant v. Ford Motor Co.,* 886 F.2d 1526, 1528 (9th Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1126, 107 L.Ed.2d 1033 (1990); *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1425 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). However, in at least two relatively recent cases, the Ninth Circuit has applied the *Bowen* principle. *See Norfolk Energy, Inc. v. Hodel,* 898 F.2d 1435, 1442 (9th Cir.1990) ("Retroactive application of statutes and regulations, *if expressly authorized by Congress,* is valid if the application is a rational means of serving a legitimate legislative purpose.") (emphasis added); *Nelson v. Ada,* 878 F.2d 277, 280 (9th Cir.1989) (applies presumption against retroactivity without citing either

**12.** As the *Hansel* court noted:

The republican senators lined up behind Senator Danforth, asserting that the Act was not intended to be retroactive. 137 Cong.Rec. § 15,485 (Oct. 30, 1991). The democratic senators lined up behind Senator Kennedy, asserting that the Act was intended to be retroactive. 137 Cong.Rec. § 15,485 (daily ed. Oct.

30, 1991). The legislative history from the House is similar with the republicans saying the Act is not retroactive and the democrats asserting the opposite. See e.g., 137 Cong. Rec. H9530–31, H9548, and H9549 (Nov. 7, 1991).

*Hansel, supra,* 778 F.Supp. at 1136–37.

*Bradley* or *Bowen*). Finally, there is a third line of Ninth Circuit authority which holds that a presumption of retroactivity applies only "when a statute is addressed to remedies and procedures and does not otherwise alter substantive rights." *Friel, supra,* 751 F.2d at 1039; *see also Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co.,* 879 F.2d 662, 663 (9th Cir.1989) (also requiring that the *Bradley* "manifest injustice" test be met, even if the statute is only remedial or procedural), *Nichols v. Stapleton,* 877 F.2d 1401, 1403 (9th Cir.1989); *Mahroom v. Hook,* 563 F.2d 1369, 1373 (9th Cir.1977).

However, in *NHIC,* the Ninth Circuit, for the first time, both acknowledged and at least appeared to resolve the tension between *Bradley* and *Bowen.* There, the court, finding no clear indication of congressional intent as to retroactivity, applied a statute of limitations provision to a case that was pending at the time of the provision's enactment. In·so doing, it reasoned as follows:

> In this circuit, since the publication of [*Bowen* ], we have recently applied *Bradley* to a statute changing the statute of limitations. *Gonzalez v. Aloha Airlines, Inc.,* 940 F.2d 1312, 1316 (9th Cir.1991). In a well written opinion holding that the statute of limitations' provisions of FIRREA can be applied retroactively, the district court in *FDIC v. Howse,* 736 F.Supp. 1437 (S.D.Tex.1990), opined that *Bradley* applies to *substantive* changes in the law because retroactive changes could result in manifest injustice. *Id.* at 1446. The court concluded that since a statute of limitations is procedural in nature, it is accorded retroactive effect because it does not affect substantive rights. *Id.* ... The analysis of the concept of limited retroaction in *FDIC v. Howse* is persuasive and consistent with

the law of this circuit as applied in *Gonzalez.*

*NHIC, supra,* at 487. From the above passage, we conclude that the Ninth Circuit has resolved the tension between *Bradley* and *Bowen* by electing to follow *Bradley* but finding that the "manifest injustice" exception to *Bradley* 's presumption in favor of retroactivity should be construed to prevent the retroactive application of legislation defining or otherwise changing *substantive* rights. Thus, although the court in *NHIC* did not explicitly acknowledge the Ninth Circuit's own line of authority applying only procedural and remedial statutes retroactively (where such application does not result in manifest injustice), it nonetheless appears to have reaffirmed that line of cases by citing with approval the reasoning applied in the *Howse* opinion.[13] Because *NHIC* is the only Ninth Circuit opinion that has explicitly addressed and resolved the tension between *Bradley* and *Bowen,* we will follow its holding on this issue rather than any contradictory Ninth Circuit authority.

Thus, we find that we are required to apply Section 102 of the 1991 Act authorizing compensatory damages and jury trials to the present case if we find (a) that the section is procedural and/or remedial in nature and (b) that such application would not result in a manifest injustice.

1. Section 102 is remedial and procedural in nature.

We find that the provisions of Section 102 are clearly procedural and remedial under Ninth Circuit authority. As noted above, Section 102 authorizes plaintiffs to seek compensatory damages in Title VII actions and provides for the right to a jury trial in cases in which such damages are being sought. The Ninth Circuit has already stated that the right to a jury trial is

---

**13.** The relevant portion of the *Howse* opinion held as follows:

> Statutes affecting ·substantive rights are ordinarily given prospective effect because retroactive application would result in manifest injustice. [citations omitted] On the other hand, statutory changes that relate only to procedure or remedy are usually held to be

immediately applicable to pending cases. [citations omitted] ... Because such statutes affect only remedies, not substantive rights, their retroactive application normally does not violate the Fourteenth Amendment to the Constitution or cause manifest injustice. [citations omitted]

*Howse, supra,* 736 F.Supp. at 1446.

procedural in nature. *Wabol v. Villacrusis*, 908 F.2d 411, 422 (9th Cir.1990). Moreover, the provisions of Section 102 authorizing plaintiffs to seek compensatory damages are remedial in nature. This finding follows from *Mahroom v. Hook*, 563 F.2d 1369 (9th Cir.1977). *See also, Koger v. Ball*, 497 F.2d 702 (4th Cir.1974); *Womack v. Lynn*, 504 F.2d 267 (D.C.Cir.1974). In *Mahroom*, the court held that the Equal Employment Opportunity Act of 1972 applied retroactively. That act authorized suits by federal employees against their employing agency in federal court for equitable relief from prohibited discrimination. Prior to the act, federal employees could only attempt to seek such relief at the administrative level. The court quoted with approval from *Womack*:

> Section 717(c) is merely a procedural statute that affects the *remedies* available to federal employees suffering from employment discrimination. Their *right* to be free of such discrimination has been assured for years.

Likewise, Section 102 does not establish any new substantive rights. Under the Civil Rights Act of 1964, government and private employees already had the right to be free from discrimination in the workplace on the basis of, among other things, reprisal for former EEO activity. 42 U.S.C. § 2000e–3(a). Similarly, under the Rehabilitation Act of 1973, federal employees already had the right to be free from discrimination on the basis of disability. 29 U.S.C. § 791.[14] Employers have long been put on notice that any such discrimination is unlawful and in violation of their employees' substantive rights. All Section 102 of the 1991 Act does is provide for a new remedy, compensatory relief, in addition to the equitable relief that prior statutes had already authorized to victims of such unlawful discrimination.[15] In fact, this "new" remedy is not especially different from the recovery of back pay that was available under prior law. Although recovery of back pay has been artificially described as "equitable" relief, recovery of back pay is really a form of limited compensatory relief in everything but name.

At least two district courts that have applied this analysis have nonetheless concluded that Section 102 of the 1991 Act is substantive in nature and thus should only be applied prospectively. One court simply stated in a conclusory manner that "[a] right to seek compensatory damages in a jury trial against the United States is a major substantive provision." *Van Meter, supra,* 778 F.Supp. at 84. Another court reasoned that Section 102 creates a new liability for a past transaction and is thus substantive in nature. *Johnson, supra,* 1992 WL 16284 (citing *United States v. Murphy,* 937 F.2d 1032, 1038 (6th Cir. 1991)). This reasoning seems to us to eviscerate completely the distinction between "substantive" and "remedial."

Moreover, Judge Beck in the Eastern District of California, applying Ninth Circuit law, concluded that Section 102 is indeed remedial and procedural in nature. *Fresno, supra,* 785 F.Supp. 846, 853. For the reasons stated above, we agree.

2. Retroactive application of Section 102 to the present case would not result in a manifest injustice.

We also find that application of Section 102 to acts of discrimination occurring before its enactment would not result in a manifest injustice against the United States, which is, in effect, the defendant. In general, "the fact that the party ad-

---

**14.** The Americans with Disabilities Act of 1990 expanded this federal statutory protection to most private employees. 42 U.S.C. §§ 12111(2), 12111(5)(A), 12112(a).

**15.** We need not address here the extent to which other sections of the 1991 Act, many of which do impact substantive rights, should be given retroactive effect. Given the almost complete lack of guidance from the legislature, it would not be surprising if application of traditional rules of statutory interpretation led to a finding that some portions of the 1991 Act applied retroactively while others did not. For example, we note that the California Supreme Court recently interpreted an initiative that was silent as to retroactivity so that its procedural provisions applied retroactively while its substantive provisions did not. *Tapia v. Superior Court,* 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434 (1991).

versely affected by the new law is a governmental entity makes a finding of manifest injustice less likely." *Campbell v. United States*, 809 F.2d 563, 575 (9th Cir. 1987). This is especially the case where the governmental entity is the United States. As the court reasoned in *Hill v. United States*, 571 F.2d 1098, 1102 (9th Cir.1978):

> [I]n view of the fact that the only interests impaired by this voluntary congressional waiver of sovereign immunity are those of the government itself, it cannot be said that any manifest injustice results from applying the amendment retrospectively.

It was fully within the legislature's power to protect the United States' interests by expressly making the 1991 Act prospective. It is clear from the legislative history that Congress was quite conscious of its failure to do so. Under these circumstances, we find no manifest injustice.

Our finding that there would be no manifest injustice in the retroactive application of Section 102 is based solely on the fact that the United States is the real defendant in this case. We have not addressed whether manifest injustice might result from the retroactive application of Section 102 to a case where a *private* employer is a defendant. Of course, if such retroactive application against a private employer *would* result in manifest injustice, our holding here would result in Section 102 being applied retroactively against some parties but not against others. This result seems counter-intuitive, in that one would expect that, absent legislative direction to the contrary, the retroactive application of a statutory provision would not depend on a case by case inquiry into the equities of applying the statute to a particular case. There is authority in the Ninth Circuit, however, for just such an approach. For example, in *City of Great Falls v. U.S. Dept. of Labor*, 673 F.2d 1065 (9th Cir. 1982), the court, in applying the "manifest injustice" test, gave considerable weight to the fact that the claimant had not diligently prosecuted her complaint when it refused to apply retroactively a statutory provision

granting certain rights and remedies to aggrieved employees. *Id.* at 1069–70.

Nonetheless, were we to reach the issue of whether retroactive application of Section 102 to an employer other than the United States would result in manifest injustice, we would likely find no manifest injustice under *Great Falls.*

The statute under consideration in *Great Falls* was a 1978 amendment to the Comprehensive Employment and Training Act (CETA) of 1973, under which states cooperated with the federal government in establishing certain employment plans, which were in turn implemented by certain employers who were supported in part by federal funds. *Id.* at 1067. Prior to the 1978 amendment, the enforcement sanctions against fund recipients whose employment policies did not meet requirements set forth in CETA consisted of the revocation of approved plans or the withholding of funds. *Id.* The 1978 amendment (and regulations issued thereunder), however, also gave employees and job applicants the right to back pay and reinstatement in cases where they were terminated or not hired by a fund recipient pursuant to policies violating CETA requirements. *Id.* at 1067, 1069.

In *Great Falls*, prior to the effective date of the 1978 amendment, a job applicant filed a grievance pursuant to CETA regulation because the City of Great Falls ("the City"), a CETA fund recipient, denied the applicant employment pursuant to an unwritten anti-nepotism policy. *Id.* at 1067. A hearing officer determined that the anti-nepotism policy violated CETA requirements because (and only because) it was unwritten, but also found that he had no authority to order reinstatement or back pay. *Id.* However, following a number of administrative appeals and after the effective date of the 1978 amendment, the City was found liable to the applicant for back pay. *Id.*

The court in *Great Falls* found that, although it was a close question, retroactive application of the 1978 amendment was manifestly unjust under *Bradley*. In doing so, it applied the three part test set forth in

*Bradley,* which requires courts to consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law on those rights." *Id.* at 1068, quoting *Bradley, supra,* 416 U.S. at 718, 94 S.Ct. at 2019. As to the first factor, the court noted that, in private cases between individuals, a finding of manifest injustice was more likely, while in "litigation involving 'great national concerns,' and parties who are public entities," a finding of injustice was less likely. *Id.* The court noted that public entities were involved, thus weighing in favor of retroactivity. *Id.* However, the court also noted that the case did not involve issues of great public concern, since the anti-nepotism policy was itself valid and the City's failure to put it in writing was only "a minor deviation." *Id.* at 1068–69. In considering the nature of the parties' rights and the nature of the impact of the law on those rights, the court found that these two factors weighed in favor of a finding of manifest injustice. *Id.* at 1069. In this respect, the court noted first that the back pay award was a "new, unanticipated liability for noncompliance with [CETA] regulations." *Id.* Second, the court held that the 1978 amendment "effected a change of substantive as well as adjective law," since, prior to the amendment, CETA "contained no similar specific provisions granting rights to an aggrieved party." *Id.* It was only the "confluence of substantive and procedural changes [that] granted power to the Secretary to provide for an award of back pay." *Id.* Third, the court observed that it was likely that the City "would have remedied or prevented the technical and minor violation had it foreseen the imposition of new liability in the form of a substantial back pay award." *Id.* After weighing all these factors (plus, as noted above, the fact that plaintiff did not diligently prosecute the case), the court concluded that, although the issue was close, retroactive application of the 1978 amendment would have resulted in manifest injustice.

In the present case, the *Bradley* factors weigh much more heavily against a finding of manifest injustice that they did in *Great Falls.* Both the present case and *Great Falls* involve statutes authorizing new forms of monetary relief to aggrieved employees. However, there are a number of important differences. First, in the present case, even when private parties are involved, enforcement of civil rights in employment involves matters of much greater national concern than the issue in *Great Falls,* which only involved the City's failure to put in writing an otherwise valid hiring policy. Second, as discussed earlier, Section 102, unlike the 1978 Amendment in *Great Falls,* is only procedural and remedial in nature and does not change substantive law. Third, it is less likely than it was in *Great Falls* that, had private employers foreseen potential liability under Section 102, they would have remedied their behavior. The court in *Great Falls* found that the City was exposed to "the imposition of new liability in the form of a substantial back pay award." Under the statute in issue in the case at bar, however, employers already were exposed (under the old law) to back pay awards. Under the 1991 changes in the law, employers are *not* exposed for the first time to monetary judgments. Instead, the 1991 changes simply expand the amounts (up to fixed caps) and kinds of damages to which defendants are exposed.[16] Moreover, even before Congress made the changes in federal law in 1991, non-federal defendants who invaded the same substantive rights that are in issue here were exposed to various forms of money damages under state law (depending upon the jurisdiction). That pre-existing exposure to damages dilutes considerably any argument that retroactive ap-

---

16. Under Section 102, a defendant is exposed to compensatory and punitive damage awards subject to caps ranging from $50,000 to $300,000, depending on the size of the employer.

A challenge by a private employer defendant to a private employee's right to punitive dam-

ages might raise more difficult questions under the *Great Falls* analysis. We do not address such questions here, since defendant in this action is a federal agency and Section 102 does not authorize punitive damages against governmental entities. See Section 102(b)(1).

plication of the new federal law would be unfair.

Because the court in *Great Falls* found, under the circumstances in that case, that the question of whether retroactivity would result in manifest injustice was "close," and because the *Bradley* factors in the present case weigh much more heavily against a finding of manifest injustice than they did in *Great Falls*, we find it unlikely that retroactive application of the compensatory damage provisions of Section 102 would ever result in manifest injustice, even as against private employers.

### C. The principle of sovereign immunity does not preclude us from applying Section 102 retroactively.

██ We reject defendant's argument that, since defendant is an agent of the federal government, the principle of sovereign immunity requires this court to resolve any doubts concerning the retroactive application of the 1991 Civil Rights Act in defendant's favor. "[T]he principle of sovereign immunity does not require us to resolve all doubtful questions concerning the temporal applicability of a statute in the government's favor when the literal requirements of the statute are otherwise met." *Campbell v. United States*, 809 F.2d 563, 577 (9th Cir.1987); *see also, Hill, supra,* 571 F.2d at 1102. Congress has expressly consented to awards of compensatory damages in cases in which federal agencies are found liable for unlawful discrimination. "We decide only what periods the statute covers." *Campbell, supra,* 809 F.2d at 577.

We are not unsympathetic to the interest (recognized by the court in *Van Meter, supra,* 778 F.Supp. at 85–86) of the federal government in having the opportunity to resolve claims for compensatory damages on an administrative level. As noted by the court in *Van Meter,* in Title VII cases, the United States has generally "conditioned the waiver of its sovereign immunity on the requirement that the plaintiff first raise his or her discrimination grievances with the agency." *Id.* at 85. A finding of retroactivity is somewhat in tension with the elaborate regulatory scheme under Title VII that allows the federal government to dispose of cases prior to litigation, as such a finding exposes the United States to liability for damages that it has not had a chance to resolve (e.g., by settlement) on an administrative level.

However, we are not persuaded that this interest requires us to find that Section 102 applies only prospectively. It was fully within Congress' power to protect the government's interest in having the opportunity to resolve claims administratively. It is clear from the legislative history that Congress considered the issue of retroactivity and consciously left the issue unresolved. It is unlikely that the above-mentioned consequences of applying Section 102 retroactively escaped Congress' attention. Moreover, the Ninth Circuit has already found that the presumption in favor of retroactivity applies in circumstances such as this. In *Bunch v. United States,* 548 F.2d 336 (9th Cir.1977), the court, following the *Bradley* presumption, applied a statute authorizing suits for age discrimination in employment against the United States to a case that had been pending at the time of the statute's enactment. (Defendant had argued that the court should dismiss the complaint on the grounds that the court had no jurisdiction under prior law.) The court expressly rejected the United States' argument that the case should be dismissed "for failure to exhaust administrative remedies that were nonexistent at the time [plaintiff] sought relief from the federal court." *Id.* at 340.

We also note that in this case the United States in fact *has* had an opportunity to consider on the administrative level the facts and merits of plaintiff's claims; it is only the issue of compensatory damages that it did not have the chance to resolve administratively.

### D. We need not defer to the EEOC's determination that the Civil Rights Act of 1991 does not apply retrospectively.

██ Finally, we reject defendant's argument that this court should defer to the determination by the EEOC that the Civil Rights Act of 1991 applies only prospec-

tively. The EEOC's determination was based solely on a decision to follow *Bowen* rather than *Bradley* on the grounds that *Bowen* was more recently decided. See Daily Lab.Rep. (BNA) (January 2, 1992). It is apparent that the EEOC's decision was not made by virtue of any expertise or special knowledge on the agency's part. Thoughtful deference to agency determinations is appropriate only as to those matters as to which the agency has a particular expertise. *Flores v. Meese*, 942 F.2d 1352, 1362 (9th Cir.1991) (en banc), *cert. granted (on other grounds), Barr v. Flores,* — U.S. ——, 112 S.Ct. 1261, 117 L.Ed.2d 490 (1992). "Questions of law that can be answered with 'traditional tools of statutory construction' are within the special expertise of courts, not agencies, and are therefore answered by the court *de novo.*" *Ayala–Chavez v. U.S. I.N.S.*, 945 F.2d 288, 294 (9th Cir.1991); quoting *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987).

Thus, Section 102 of the Civil Rights Act of 1991 is applicable to this case and authorizes plaintiff to seek compensatory relief on her claims for reprisal and handicap discrimination. Moreover, if such relief is sought, either party will be entitled to demand a jury trial.

IT IS SO ORDERED.